**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Criminal No.: 15-175 (CRC)** |
| | : | |
| **JOSEPH ANTHONY CAPUTO,** | : | |
| | : | |
| | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes the defendant's Motion to Dismiss on First Amendment grounds.   In addition, the government opposes the defendant's request for a hearing.   Simply stated, the statute at issue, 18 U.S.C. § 1752(a)(1), regulates conduct – unlawfully entering a restricted building or area – not speech.   Even if the statute incidentally regulates speech, the substantial governmental interests associated with protecting the President of the United States and the orderly operation of the executive branch, clearly outweigh any such incidental restriction.   This defendant jumped the White House fence causing the White House to be locked down with the First Family reportedly inside.   It was a serious and dangerous act that put multiple lives at risk including the defendant's own.   The defendant now attempts to hide behind the First Amendment to justify his actions.   The government asks the Court to reject that justification and states the following in support of its opposition to defendant's motion to dismiss:

I.   **Factual and Procedural History**

On November 26, 2015, United States Secret Service Officer Scott Silvestro was posted midway along the North Fence Line of the White House when he witnessed an individual, later identified as Joseph Anthony Caputo ("the defendant"), scaling the White House fence with one leg over the fence with an American flag adorned around him like a cape.   Officer Silvestro ran towards the defendant but failed to reach him before the defendant made it over the fence and dropped onto the North Lawn of the White House.   Officer Silvestro called out the incident over the radio to alert other officers of the incident.

The defendant ran south towards the White House while members of the Uniform Division of the Secret Service ordered him to stop and get on the ground.   The defendant complied with these orders and was taken into custody on the North Lawn of the White House.

On November 26, 2015, United States Secret Service Lieutenant Ken Matthews responded on the inside of the North Fence Line and observed the defendant already in the act of complying with the verbal commands of officers on the North Lawn.   Lt. Matthews took custody of the defendant and walked him, handcuffed, to the public side of the North Fence Line of the White House.   While in custody, the defendant made spontaneous utterances to Lt. Matthews, stating, "I love my country" and "I knew I would be locked up."   Pursuant to a search incident to arrest, officers removed several items from the defendant, including an American flag, a USB flash drive in the form of a "Captain America" shield, a pocket guide to the Constitution, and weightlifting gloves.

On November 26, 2015, officers conducted an interview of two individuals in Virginia who know the defendant and with whom the defendant had stayed since Monday, November 23,

2015.   During the interview, the individuals provided two letters that the defendant left at their residence.   Review of these letters revealed that the defendant clearly expected or intended to die when he jumped the White House fence.   One letter read, "Death is a natural part of life. Rejoice for those around us who transform into the Force."   The other letter was intended to exonerate the subjects of the interview from any actions of the defendant.

On November 26, 2015, officers interviewed the defendant's mother at her residence in Connecticut.   During the interview, the defendant's mother provided officers with a "Last Will and Testament" prepared by the defendant.   Officers also heard an audio message left by the defendant in which he told his mother that something will happen and the defendant may or may not be able to see her again.

Media reports about the incident indicated that the White House went into lockdown following the defendant's incursion while the President and the first family were celebrating Thanksgiving.

On November 30, 2015, the government charged the defendant in a one-count Information with entering or remaining in a restricted building or grounds in violation of 18 U.S.C. §1752(a)(1) for jumping over the White House fence on November 26, 2015.   The defendant was arraigned on that charge and released on his personal recognizance.   In addition, the defendant was ordered to stay away from the District of Columbia other than for court appearances and other legal obligations.

On June 3, 2016, the defendant filed a motion to dismiss the Information.   He argues that the Information should be dismissed because he was exercising his freedom of speech when

he jumped the White House fence entering the grounds.   He also contends that the statute is
unconstitutionally vague.

## II.   <u>Argument</u>

The defendant's motion to dismiss is completely without merit.   First, the unlawful
entry statute regulates conduct — not speech.   Even if there is an incidental effect on speech,
that effect is overwhelmingly and clearly outweighed by the important governmental interest of
protecting the President in his home and the need for the uninterrupted functioning of the
executive branch.   The case law, as discussed fully below, is crystal clear – even *actual speech*
across the street from the White House can be limited out of fear of someone scaling the fence.
*White House Vigil for ERA Committee v. Clark*, 746 F.2d 1518, 1533 (D.C. Cir 1984).   This
case does not involve speech, it involves unlawful *conduct*.   The government requests that the
Court deny the defendant's motion to dismiss and deny his request for a hearing.   Finally,
because it is clear that the defendant's conduct — jumping over the White House fence — was
prohibited by 18 U.S.C. §1752(a)(1), he has no grounds to argue that the statute is vague as
applied to others.

### A. 18 U.S.C. § 1752(a)(1) Regulates Conduct — Not Speech — and Any Incidental Limitation on Speech is Justified by Important Governmental Interests.

It is well established that, when a law bans non-expressive conduct, it does not implicate
the First Amendment.   *See Virginia v. Hicks*, 539 U.S. 113, 123 (2003) (arrest of defendant who
returned to area after receiving barring notice did not violate First Amendment because
defendant arrested for conduct related to trespassing not speech).   As in *Hicks*, the defendant is

charged for the conduct of unlawfully entering the White House grounds.   He is not charged with anything implicating speech.   His conduct is more akin to a burglary — he literally unlawfully gained access to a home — than an expressive act protected by the First Amendment. There is not a limitless variety of conduct that can be labeled "speech" simply because the person engaging in the conduct intends to express an idea.   *See United States v. O'Brien*, 391 U.S. 367, 376 (1968).

In any event, "[w]hen 'speech' and 'nonspeech' elements are combined in the same conduct, sufficiently important governmental interest in regulating the 'nonspeech' element can justify incidental limitations on First Amendment freedoms."   *O'Brien*, 391 U.S. at 376. "Government regulation is sufficiently justified if it is within the constitutional power of the government; if it furthers an important or substantial government interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest."   *Id.* (defendant charged with destroying selective service certificate not exercising First Amendment right when he burned certificate in protest as substantial government interest in assuring continuing issuance of selective service certificates outweighs defendant's First Amendment interests).

In this case, there are numerous important and substantial governmental interests involved.   The President of the United States is the nation's chief executive and commander-in-chief of the armed forces.   The White House, in which he and his family reside, is a target for terrorists and others who want to bring harm to the United States and notoriety to themselves or their causes.   The substantial governmental interests in protecting the President

and the White House grounds greatly outweigh any incidental restriction on the defendant's freedom of speech.   Notably, the interest is not in simply protecting the President from harm. Rather, when the security of the White House grounds are breached, the entire complex goes into lockdown, which could dramatically affect the operations of the entire executive branch.   *See White House Vigil for ERA Committee v. Clark*, 746 F. 2d 1518, 1528 (D.C. Cir 1984) (not only is safety of one man at stake but the ability of the executive branch to function in orderly fashion and capacity of United States to respond to threats and crises affecting the entire free world at risk); *Watts v. United States*, 394 U.S. 705, 707 (1969) (undoubtedly valid and overwhelming national interest in protecting the safety of its Chief Executive).

In sum, 18 U.S.C. § 1752(a)(1) regulates only the conduct of "knowingly entering any restricted building or grounds without lawful authority to do so."   *Id*.   The defendant's actions frustrated the government's interest in keeping the White House grounds secure in order to maintain the President's safety and locked down the White House while the President was reportedly inside.   The governmental interests associated with keeping the President and the White House safe and the executive branch operating smoothly overwhelmingly outweigh any incidental effect on any First Amendment right the defendant professes he was exercising.

### B. Even if the Statute Regulated First Amendment Protected Activity, it Does Not Violate the First Amendment.

The statute's restriction on the activity of unlawfully entering a restricted building or area does not violate the First Amendment because the White House grounds are government-owned property that are not by tradition or designation a forum for public communication, the regulation on the activity is reasonable to protect the property, and the statute is viewpoint neutral.

6

The First Amendment does not guarantee access to property which is not by tradition or designation a forum for public communication simply because it is owned or controlled by the government.   *See U.S. Postal Service v. Greenburgh Civic Ass's.*, 453 U.S. 114, 129 (1981). "Recognizing that the Government, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated, the [Supreme] Court has adopted a forum analysis as a means of determining when the Government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes*."   Cornelius v. NAACP LDF*, 473 U.S. 788, 799-800 (1985).   An area is not considered a public forum where there is clear evidence of a contrary intent, such as not granting public access to the forum.   *See Perry Education Assn v. Perry Local Educators' Assn.*, 460 U.S. 37, 46 (1983) (school district's internal mail system not public forum because school board did not grant general access to school mail system).   The government creates a public forum only by intentionally opening a nontraditional forum for public discourse.   *See Cornelius*, 473 U.S. at 802.

The state may reserve a nonpublic forum for its intended purpose, communicative or otherwise, as long as the regulation on speech is reasonable and not specific to a speaker's view. *See Perry Education Assn,* 460 U.S. at 46.   In a non-public forum, restrictions on expressive activities "must survive only a much more limited review."   *International Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 679 (1992).   "In a nonpublic forum[,] the government need not adopt the most narrowly tailored means available*."   Initiative & Referendum Inst. v. U.S. Postal Serv.*, 685 F.3d 1066, 1073 (D.C. Cir. 2012).

## 1.   18 U.S.C. § 1752(a)(1) Is Reasonable.

The White House is unique in that it serves as both a seat of government and the private residence of the President.   Therefore, the security of the White House grounds is paramount to national security and those security implications justify a greater limitation on speech on the White House grounds, and even its surrounding parameter.   *See White House Vigil for ERA Committee v. Clark*, 746 F.2d 1518, 1533 (D.C. Cir 1984) (limiting size, materials, and positioning of protest signs in public park outside the White House was reasonable limitation on First Amendment because (1) large signs obstruct the Secret Service's ability to make observation and communicate; (2) non-rigid material design would prevent protest signs from being used to scale the White House fence; and, (3) the prohibition of leaning of signs against the White House fence ensures that terrorists will not be able to hide explosives or deadly objects in the triangular area between the sign and the fence ledge).   The *White House Vigil* case is dispositive of the defendant's motion in this case.   In that case, the Court explicitly limited speech in a park across the street from the White House in order to protect the White House grounds from those, like the defendant, who would attempt to breach the fence.   *Id.*   The notion that the defendant's act of actually jumping over the fence is protected speech is illogical in that context.

### 2.   18 U.S.C. § 1752(a)(1) is Viewpoint Neutral.

Regulations are viewpoint neutral if they do not regulate speech on the basis of content. *U.S. Postal Service v. Council of Greenburgh Civic Ass'n*, 453 U.S. 114, 132 (1981) (federal statute prohibiting deposit of unstamped mail in mailbox clearly did not regulate speech on basis of content because it regulated the act of deposit with no regard to what communications the mail contained).   In this case, the White House grounds are clearly a nonpublic forum.   The fence,

8

Secret Service officers, and massive security clearly denote the critical nature of the compound and the need to protect it.    Not only are the White House grounds not a public space, but, to the contrary, the government has taken great pains to protect it and wall it off from the public. Therefore, even if the unlawful entry statute did regulate speech — and it clearly does not — the alleged restrictions on speech are reasonable and viewpoint neutral.

## C.  18 U.S.C. § 1752(a)(1) Is Not Overbroad

A litigant generally does not have standing to challenge the constitutionality of a statute as applied to others not before the Court.    *See Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973).    There is, however, a limited exception "in the area of the First Amendment." *Id.* at 611; *see also United States v. Williams*, 553 U.S. 285, 292 (2008).    "[T]he principal advantage of the overbreadth doctrine for a litigant is that it enables him to benefit from the statute's unlawful application to someone else."    *Board of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 483 (1989) (emphasis in original).    The "overbreadth doctrine seeks to strike a balance between competing social costs."    *Williams*, 553 U.S. at 292.    "On the one hand, the threat of enforcement of an overbroad law deters people from engaging in constitutionally protected speech, inhibiting the free exchange of ideas."    *Id.*    "On the other hand, invalidating a law that in some of its applications is perfectly constitutional — particularly a law directed at conduct so antisocial that it has been made criminal — has obvious harmful effects."    *Id.*    Overbreadth challenges also "invite judgments on fact-poor records" and "allow a determination that the law would be unconstitutionally applied to different parties and different circumstances from those at hand."    *Sabri v. United States*, 541 U.S. 600, 609 (2004).    For these reasons, "[i]nvalidation for overbreadth is strong medicine that is not to be casually employed."    *Williams*, 553 U.S. at

293 (internal quotation marks omitted).   "In order to maintain an appropriate balance," the Supreme Court has "vigorously enforced the requirement that a statute's overbreadth be *substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Williams*, 553 U.S. at 292 (emphasis added); *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n.6 (2008).   "Even where a statute at its margins infringes on protected expression, facial invalidation is inappropriate if the remainder of the statute . . . covers a whole range of easily identifiable and constitutionally proscribable . . . conduct[.]" *Osborne v. Ohio,* 495 U.S. 103, 112 (1990) (internal quotation marks omitted).

The unlawful entry statute is not overbroad as to have a chilling effect on First Amendment protected activity because, as previously noted, the unlawful entry onto the premises of the White House grounds is not protected expression.   See *supra* Section A.   18 U.S.C. § 1752 prohibits entering or remaining in any restricted building or grounds without lawful authority to do so.   There is no First Amendment protection to enter nonpublic grounds. Simply put, it is not protected speech to unlawfully enter the White House grounds and, therefore, enforcing this statute against the defendant cannot have a chilling effect on First Amendment protected expression.

### D.   "Without Lawful Authority" Language Is Not Unconstitutionally Vague.

The Court should reject the defendant's argument that the statute's "without lawful authority" language is unconstitutionally vague.   A vagueness challenge is rooted in the Due Process Clause, not the First Amendment.   See *Williams*, 553 U.S. at 304.   Vague laws are constitutionally problematic because they "may trap the innocent by not providing fair warning." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).   Vague laws also fail to avert "arbitrary

and discriminatory application" and may discourage citizens from engaging in constitutionally protected activity for fear of prosecution.   Id. at 109.   "Where the legislature fails to provide such minimal guidelines, a criminal statute may permit a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections*."   Kolender v. Lawson*, 461 U.S. 352, 358 (1983) (internal quotation marks omitted; alteration in original); see also *Wash. Mobilization Comm. v. Cullinane*, 566 F.2d 107, 117 (D.C. Cir. 1977) ("an ordinance is void for vagueness if it is an unrestricted delegation of power, which in practice leaves the definition of its terms to law enforcement officers, and thereby invites arbitrary, discriminatory and overzealous enforcement.").   Nevertheless, "[c]ondemned to the use of words, we can never expect mathematical certainty from our language."   *Grayned*, 408 U.S. at 110.   When an area is restricted to all but authorized persons, a person who has not been authorized to be on the premises does not have the "lawful authority" to be in the restricted area.   *See United States v. Bursey, 416 F.3d 301, 307 (4th Cir 2007)*at 308 (when area where Air Force One was going to land was restricted to only authorized personnel the defendant, not being authorized, was restricted from being in the area).

In this case, it is beyond clear that the defendant did not have "lawful authority" to enter the White House grounds.   There is an unambiguous giant fence protected by scores of law enforcement officers denoting the prohibition on attempting to enter the White House grounds without permission.   When an area is clearly restricted, it is clear that an individual does not have "lawful authority" to enter those premises.   There is nothing "vague" about that.   *See Bursey*, 416 F.3d at 307 (area where President of the United States was temporarily visiting was clearly restricted even without physical barrier because restrictions were visibly marked by

agents stationed along area's perimeter).   "A fence, a gate, or any other barrier which controls public access to property gives notice to persons that they do not have a legal right to enter or remain in a certain area."   *United States v. Powell*, 563 A.2d 1086, 1090 (D.C. 1989).   In fact, the defendant knew that by jumping the fence he would likely die in the process as evidenced by a series of letters he wrote to family and friends.   Moreover, after he was detained, the defendant made a spontaneous utterance to Lt. Matthews stating, "I knew I would be locked up."

Because the defendant had clear notice that he did not have lawful authority to jump the White House fence, he does not have grounds to challenge the "without lawful authority" language in the unlawful entry statute as vague.   *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 18–19 (2010) (holding that one "'who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others'") (quoting *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 495 (1982)).   This "rule makes no exception for conduct in the form of speech."   *Id.* at 20; *see also id.* ("[A] plaintiff whose speech is clearly proscribed cannot raise a successful vagueness claim under the Due Process Clause of the Fifth Amendment for lack of notice.   And he certainly cannot do so based on the speech of others.").[1]

III.   **Conclusion**

---

[1] In any event, even if the defendant had a basis to challenge the statute for vagueness, the phrase "without lawful authority" is as clear a phrase as any in the English language.   In a restricted building or grounds such as the White House, a person who has not been authorized to enter the premises does not have the "lawful authority" to enter the premises.   It applies to all who have entered the grounds without first receiving the proper authorization.   As in *Bursey,* in which it was clear that the defendant did not have lawful authority to enter the landing area for Air Force One, a person of common intelligence would clearly knew that he or she would not have "lawful authority" to jump the White House fence to enter the White House grounds.   See *supra.*

WHEREFORE, the government respectfully requests that the Court deny the defendant's Motion to Dismiss and Motion for a Hearing.

Respectfully submitted,

CHANNING D. PHILLIPS
UNITED STATES ATTORNEY
D.C. Bar Number 415 793


By:_____/s/_____
ARI REDBORD
(DC BAR #: 476 998)
Assistant United States Attorney
National Security Section
United States Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-7018
Ari.Redbord@usdoj.gov

13